UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

IRVING PHILLIPS                          CIVIL ACTION NO. 07-0110

VS.                                      JUDGE MELANÇON

COMMISSIONER SOCIAL SECURITY             MAGISTRATE JUDGE METHVIN
 ADMINISTRATION

## REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable law, it is

recommended that the Commissioner's decision be **REVERSED** and the case be **REMANDED**

to the Commissioner for further administrative action.

### *Background*

Born on April 2, 1959, Irving Phillips ("Phillips") is 48 years old.  Phillips has a ninth

grade education and worked in the past as a welder.  Phillips applied for disability and

supplemental security income benefits on April 1, 2004, alleging disability as of August 13, 2000

due to neck, back, and shoulder pain after he was involved in an on-the-job accident.  Phillips

also has numbness in his hands and seizures.  Phillips's application was denied on initial review

and an administrative hearing was held on June 15, 2006.[1]  In an opinion dated July 25 2006, the

ALJ found that Phillips was not disabled because he could perform light work, which exist in

significant numbers.[2]  The Appeals Council denied review and Phillips timely filed this appeal.

---

[1] Tr. 215-248.

[2] Tr. 14-25.

2

*Assignment of Errors*

Phillips raises a number of errors, but essentially contends that the ALJ's findings are unsupported by substantial evidence.

*Standard of Review and the Commissioner's Findings*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen , 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

1.    If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

2.    A person who does not have a "severe impairment" will not be found to be disabled.

3

3.      A person who meets the criteria in the list of impairments in
        Appendix 1 of the regulations will be considered disabled without
        consideration of vocational factors.

4.      If a person can still perform his past work, he is not disabled.

5.      If a person's impairment prevents him from performing his past
        work, other factors including age, education, past work experience,
        and residual functional capacity must be considered to determine if
        other work can be performed.

In the case at bar, the ALJ found that Phillips had the following severe impairments:

"seizures, cervical/lumbar disc disease, bilateral carpal tunnel, rotator cuff tendonitis, reflex

sympathetic dystrophy, hypertension, and diabetes mellitus."[3]  At Step 5, the ALJ found that

Phillips could perform light work with limitations.  Relying on the testimony of a vocational

expert, the ALJ found that there were jobs existing in significant numbers which Phillips could

perform, and therefore he was not disabled.

### *Administrative Record*

**Carpal tunnel, shoulder, back, and neck pain**:   On August 28, 2000, while he was

working as a welder, Phillips stopped a 200 pound bottle of oxygen from falling and his left

shoulder began to hurt thereafter.  On September 1, 2000, Phillips was examined by Dr. John P.

Schutte, an orthopedist.[4]  Dr. Schutte diagnosed a probable rotator cuff strain and gave him a

Licodaine and Celestone injection for pain.  Dr. Schutte did not allow Phillips to return to work

at that time.

---

[3] Tr. 19.

[4] Tr. 106.

4

On September 7, 2000, Dr. Schutte noted that Phillips had improved and that he could return to work as long as he refrained from repetitive over head lifting.[5]  On September 28, 2000, Phillips returned to Dr. Schutte, reporting that he went back to work, but he was sent home because his shoulder was swelling and he had numbness in his hands.[6]  Dr. Schutte noted that Phillips may have carpal tunnel syndrome.  He was prescribed Celebrex and instructed not to return to work.

Nerve conduction studies showed median nerve slowing bilaterally, as well as left ulnar nerve slowing.[7]  An MRI on October 27, 2000, of Phillips left shoulder showed mild changes of tendonosis.  The MRI of the cervical spine showed cervical spondylosis, worse on the right at C3-4.[8]  On November 2, 2000, after reviewing the MRIs, Dr. Schutte diagnosed Phillips with cervical disc disease and carpal tunnel syndrome on the right and left.  Dr. Schutte recommended that Phillips undergo carpal tunnel release surgery.

On November 15, 2000, Phillips was examined by Dr. James Ghadially, an orthopedist, for complaints of neck, left wrist, shoulder, and arm pain and numbness in his left hand.[9]  Dr. Ghadially noted that Phillips had severe pain on range of motion and "marked spasm in the trapezii and the paracercials."[10]  Phillips also had a "very positive impingement test."[11]  Phillips

---

[5] Tr. 105.

[6] Tr. 95.

[7] Tr. 92.

[8] Tr. 91.

[9] Tr. 167-173.

[10] Tr. 172.

[11] Tr. 172.  The Hawkins' test is performed to determine whether there is impingement of structures

5

had weakness of grip strength in his left hand.  Dr. Ghadially diagnosed Phillips with possible

cervical radiculopathy, mild anterior glenohumeral instability and internal derangement of the

left shoulder, internal derangement of the left writs, and possible carpal tunnel syndrome.[12]  Dr.

Ghadially recommended physical therapy and prescribed an anti-inflammatory and muscle

relaxer.  Dr. Ghadially also referred Phillips for a myelogram and CT scan of the cervical spine,

and he considered him a candidate for arthroscopic surgery of his shoulder.  On August 20, 2001,

Phillips had arthroscopic surgery on his left shoulder.[13]

On January 17, 2001, an MRI of the left wrist showed "mild flattening of the median

nerve which can be associated with a carpal tunnel syndrome.  Mild Carpal synovitis."[14]

A cervical myelogram on February 1, 2001 showed herniated discs at C3-4, C4-5, C5-6,

and C6-7 and bulging discs at C2-3 and C7-T1.[15]  Three of the herniated discs were compressing

the spinal cord.[16]

Dr. Ghadially examined Phillips on November 20, 2001, and noted that he had spasm in

his cervical spine and pain with range of motion.[17]  Dr. Ghadially noted that Phillips was "a

---

[12] Tr.  173.

[13] Tr. 165, 177.

[14] Tr. 166.

[15] Tr. 138-141.

[16] Tr. 141.

[17] Tr. 159-162.

6

candidate for an anterior cervical discectomy and fusion at C3-4 and C4-5".[18]  On April 11, 2001,

Phillips returned to Dr. Ghadially, continuing to complain of neck and shoulder pain and

radiculopathy in the upper extremity.[19]  Dr. Ghadially recommended steroid injections.

On December 7, 2001, an MRI showed a large herniated disc at L4-L5.[20]

**Seizures**:  On March 7, 2001, Phillips was examined by Dr. Ralph Lilly, a neurologist.

Phillips had three seizures one evening after he was hurt by the oxygen tank accident while at

work.  Phillips reported that this only occurred once.  Dr. Lilly concluded that the seizures were

possibly related to a viral infection or sleep deprivation.[21]

On September 2, 2004, Phillips was seen at the Teche Action Clinic after he had clonic

movements and frothing during sleep.[22]  Phillips was diagnosed with seizure disorder and

prescribed Dilantin for treatment and prevention of the seizures.[23]

On February 24, 2006, Phillips was examined at the neurology clinic at Leonard Chabert

Medical Center.[24]  Phillips reported having two to three seizures per week.  Phillips's wife

reported that he foams at the mouth, yells, and moves uncontrollably when having a seizure.  It

was noted that Phillips had not been compliant with his anti-seizure medication.

---

[18] Tr. 161.

[19] Tr. 157-158.

[20] Tr. 110.

[21] Tr. 124.

[22] Tr. 206.

[23] Tr. 202, 203, 205.

[24] Tr. 183-184.

7

An EEG was normal on March 21, 2006.[25]  Phillips was examined again at the neurology clinic on April 20, 2006.[26]  Phillips reported having two to three seizures since his last visit of February 24th.  Phillips complained of headaches after having seizures.   Phillips was told not to drive and was encouraged to take his medication.

**Heart problems and diabetes**: Phillips was examined by Dr. Edison Ong, a family doctor, on January 22, 2001.[27]  An EKG indicated that Phillips has had "mild heart attacks."[28] On July 21, 2005, Phillips was diagnosed with probable angina and told to take a baby aspirin daily, and he was prescribed nitroglycerin.[29]  On April 19, 2006, Phillips was examined at Teche Action Clinic complaining of chest tightness and shortness of breath.[30]  The record contains information concerning diabetes nutrition tips, however, there is no information concerning Phillips's diabetes diagnoses.

**Consultative Examination**: At the request of Disability Determination Services ("DDS"), Phillips was examined by Dr. John Canterbury, an internist, on May 15, 2004.[31]  Dr. Canterbury noted that Phillips complained of having seizures three times per week and that he was not taking his prescribed anti-seizure medication because he could not afford it.  Phillips reported that he could perform most of his daily activities when he was not having seizures.  He

---

[25] Tr. 185.

[26] Tr. 182.

[27] Tr. 108-109.

[28] Tr. 123.

[29] Tr. 196.

[30] Tr. 195.

[31] Tr. 176-180.

8

can lift moderately heavy objects with his right arm, but he cannot use his left arm.  Phillips

stated that minimal use of his left arm causes pain from his shoulder and neck and into his

fingers.  Phillips reported that he has high blood pressure, but doesn't take medication because he

can't afford it.  Phillips complained of having headaches three times a week that last for 90

minutes.  Phillips was able to get on and off of the examination table without problem.

Dr. Canterbury noted that Phillips's left shoulder and left wrist were tender and swollen.

Dr. Canterbury found no positive sign of carpal tunnel syndrome.[32]  Phillips's left upper

extremity was sweating "profusely" but no sweating was noted on the right.  Phillips' grip

strength was less on the left secondary to pain.  Dr. Canterbury took x-rays of Phillips's cervical

and thoracic spine and left shoulder.  The cervical spine showed spondylosis and the left shoulder

showed degenerative joint disease.

Dr. Canterbury impression was:

1.      Back pain ....  He is now left with residual pain and states that he needs to wear a
        back brace.

2.      Neck pain, left shoulder pain and left upper extremity numbness and weakness.
        Again, all relate to the injury on the job just as does the back pain.  It does not
        appear that the patient has had any surgery on his cervical neck, I am not certain
        of the exact etiology of the pain.  It could be neurologic versus musculoskeletal.
        The patient may have some arthritis, but I would doubt that arthritis in and of
        itself would cause all of these symptoms.  Regardless, this patient is limited in
        using his left upper extremity secondary to the pain and the swelling.  May be that
        the patient is suffering from some type of reflex sympathetic dystrophy, which
        sometimes can be seen secondary to traumatic injury, again I am not sure.  It
        appears the patient is under workup.  Carpal tunnel syndrome was mentioned, it
        may be that the patient has carpal tunnel syndrome or it could be that he has
        something else that his related to his cervical neck injury.

---

[32] See http://www.gpnotebook.co.uk/cache/1812332556.htm and
http://www.medterms.com/script/main/art.asp?articlekey=16687 .

9

>The patient was able to sit, stand and walk.  He was able to lift moderately heavy objects with the right upper extremity, he is again limited on the left as outlined.  Hearing and speaking appears to be intact.  The handling of objects is intact with the right upper extremity and agin limited as outlined for the left, specifically fine and gross motor manipulation limited secondary to mostly pain in the left upper extremity and the left hand and fingers.[33]

**Administrative Hearing**: At the hearing, Phillips testified that he continues to have problems moving his left arm and shoulder.[34]  Both of his hands are always numb.[35]  He has back pain and his legs give out sometimes.  He has days when he cannot move much because of back pain.[36]  He gets headaches about twice a week and he has to lay down in order to ease the pain.[37]  Phillips testified that he has been having seizures since 2004.  He has seizures three times a month, even when he is taking anti-seizure medication.[38]  The medication has helped "a little bit" with controlling the seizures.[39]  Phillips testified that he spends most days watching television.[40]  Phillips has problems sleeping because of pain.[41]

---

[33] Tr. 180.

[34] Tr. 221-222.

[35] Tr. 225.

[36] Tr. 223.

[37] Tr. 224.

[38] Tr. 226-227.

[39] Tr. 214.

[40] Tr. 228.

[41] Tr, 230.

10

Mary Elvir, a vocational expert, also testified at the hearing.[42]  Ms. Elvir testified that a person who could perform light work, with no balancing, driving, climbing, no overheard reaching with the left upper extremity, and no repetitive fine or gross manipulation with the left hand, could perform the jobs of security surveillance monitor, retail sales person, and information clerk.

### Findings and Conclusion

Phillips' contentions regarding the ALJ's errors are summarized as follows in his brief:

The decision of the Administrative Law Judge, made in the absence of Residual Functional Capacity assessments by the State Agency or any treating or examining physician, does not, and cannot, reflect an informed judgment of the facts.

The decision relies on a Consulting Examination that is woefully deficient in complying with the appropriate Regulatory standards for such exams.  With its combination of failure to discuss pertinent information and the discernment of surgery that never happened, the report is a travesty.

Ultimately, the decision is grounded in the medical opinions and speculations of an Administrative Law Judge who possesses neither the training nor the authority to wield such opinions.

***

This decision should be reversed.  This Court should find that the claimant has established at least a twelve month period of disability following his alleged onset date in August 2000 based upon his diagnostic test findings and the recommendation for cervical spine surgery in November 2001.

This matter should be Remanded with instructions to obtain the services of a medical expert in the field of orthopedics or neurosurgery to evaluate the Claimant's impairments and to assess wether the Claimant regained the capacity to perform work at an SGA level.

---

[42] Tr. 235-242.

11

The Court should direct that this matter be assigned to another Administrative Law Judge.[43]

Phillips has serious medical problems, as outlined above.  He has four herniated cervical discs and a herniated lumbar disc.  Spasms in both the cervical and lumbar regions are noted, as well as tenderness to palpation.  Phillips is a candidate for cervical spine discectomy and fusion, and he has undergone surgery on his shoulder.  Further, since 2004, Phillips has a documented history of seizures.

Despite the medical evidence and Phillips' complaints, the ALJ determined that Phillips could perform light work jobs that existed in substantial number in the economy.

The ALJ is responsible for assessing the medical evidence and determining the claimant's residual functional capacity.  Perez v. Heckler,  777 F.2d 298, 302 (5th Cir. 1985).  The ultimate issue of disability is reserved to the Commissioner.  Although the ALJ is entitled to make credibility determinations, when medical evidence supports complaints of pain and the opinions of physicians, the ALJ must have good cause for his credibility decisions.  Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994);[44]  Cook v. Heckler, 750 F.2d 391, 395 (5th Cir. 1985); Jones v. Bowen, 829 F.2d 524, 527 (5th Cir. 1987).[45]

_____

[43] Rec. Doc. 8 at pps. 19-20.

[44] "The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  Id. quoting, Bradley v. Bowen, 809 F.2d  1054, 1057 (5th Cir. 1987).  The ALJ is certainly able to decrease reliance on treating physician testimony for good cause.  Leggett v. Chater, 67 F.3d 558, 566 (5th Cir. 1995).  "Good cause for abandoning the treating physician rule includes 'disregarding statements [by the treating physician] that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by evidence.'"  Id.

[45] The ALJ's determination in this regard is entitled to considerable deference.  Id.  However, if uncontroverted medical evidence reveals a basis for the subjective complaints of pain, the "ALJ's unfavorable credibility evaluation of a claimant's complains of pain will not be upheld on judicial review . . . at least where the ALJ does not on an articulated basis weigh the objective medical evidence in assigning reasons for discrediting the claimant's subjective complaints of pain."  Cook v. Heckler, 750 F.2d at 395.

12

The only medical evidence that supports the ALJ's RFC assessment is the opinion of the DDS examiner, Dr. Canterbury.  Dr. Canterbury's report, however is flawed.  As pointed out by Phillips, Dr. Canterbury references a non-existent back surgery, "... it appears that at that time a disc slipped in his back and he has required surgery for this."[46]  Most troubling, however, is the fact that Dr. Canterbury makes no reference to the fact that diagnostic studies performed by other doctors show that Phillips has four herniated discs in his neck and one in his back.  In fact, in the diagnostic impression section of the report, Dr. Canterbury states that, "... I am not certain of the exact etiology of the [neck] pain.  It could be neurologic versus musculoskeletal."[47]  This clearly shows that Dr. Canterbury did not have full and adequate medical records concerning Phillips before he rendered his opinion.  It seems that had Dr. Canterbury known of the four herniated discs in Phillips's neck, he would have at the very least discussed this fact in addressing the etiology of Phillips's neck pain.  Although Dr. Canterbury had x-rays performed, the record shows that MRIs were necessary to understand the severity of Phillips's condition.  Likewise, Dr. Canterbury acknowledged in his report that he did not have any records concerning Phillips's seizure disorder and he did not include a diagnostic impression of this disorder or delineate how it affects Phillips's ability to perform work related tasks.  The undersigned concludes, therefore, that the ALJ erred in relying on the Dr. Canterbury's report.

Moreover, the undersigned concludes that the ALJ erred in not obtaining additional evidence in order to determine the effects of Phillips's neck, back, and shoulder impairments, as well as his seizure disorder.  In order to determine whether Phillips meets the requirements of a

---

[46] Tr. 176.

[47] Tr. 180.

13

listed impairment, or whether he has the residual functional capacity to perform work, the ALJ should have obtained an adequate medical opinion addressing the work-related tasks which Phillips could and could not perform.  The treating physicians did not address Phillips's residual functional capacity, and Dr. Canterbury's report is deficient.  Consequently, the record does not contain information regarding what tasks Phillips can perform.

Title 20 C.F.R. § 404.1512(e) requires the ALJ to recontact  medical sources when their opinions do not provide sufficient information for the ALJ to determine disability status.  The ALJ did not recontact any examiners to obtain their opinion regarding the job-related tasks that Phillips can or cannot perform.  Rather than recontact the doctors, the ALJ simply entered RFC findings which are unsupported by any substantial evidence.

Considering the lack of information regarding Phillips's residual functional capacity, the undersigned is unable "to make a definitive ruling concerning a claimant's disability based on the record before the court," including the time period for which Phillips argues he should be awarded a period of disability (2000-2001).  Although Phillips was undergoing treatment at that time, the record is void of any information regarding his residual functional capacity.

Accordingly, it is recommended that the case be remanded to the Commissioner with instructions to recontact the medical sources in order to obtain information regarding the work-related tasks which Phillips is capable of performing.  Additionally, the ALJ shall refer Phillips for a consultative examination by either an orthopedist, a neurologist, or both.  Finally, the case should be reassigned to a different ALJ.  The impartiality of the ALJ is integral to the integrity of the system. Shepard v. Massanari 2002 WL 31190917, *8 (E.D.La.,2002)*, citing* Johnson v. Mississippi*, 403 U.S. 212, 216, 91 S.Ct. 1778, 1780, 29 L.Ed.2d 423, 427 (1971).  Considering

14

the history between the ALJ and Phillips's counsel as outlined in the brief, it appears that

reassignment is in order to avoid the appearance of partiality.

*Conclusion*

For the foregoing reasons, the undersigned concludes that substantial evidence does not

support the ALJ's determination of non-disability.  Remand is appropriate only upon a showing

of "good cause," which includes an "inability to make a definitive ruling concerning a claimant's

disability based on the record before the court." Ferguson v. Schweiker, 641 F.2d 243, 250, n. 8

(5th Cir.1981).  In this case, the record is insufficient to make a definitive ruling on the issue of

disability.  Accordingly, it is recommend that the Commissioner's decision be **REVERSED** and

that this case be **REMANDED** to the Commissioner for further administrative action pursuant to

the fourth sentence of 42 U.S.C. § 405(g).  This includes, but is not limited to, assigning a

different ALJ to the case, sending the case to the hearing level with instructions to the new ALJ

to recontact Phillips' medical sources in order to obtain information regarding Phillips's residual

functional capacity, and obtaining a consultative examination by an orthopedist or neurologist.

Phillips should be afforded the opportunity to submit additional evidence and to testify at a

supplemental hearing.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved

by this recommendation have ten (10) business days from receipt of this report and

recommendation to file specific, written objections with the Clerk of Court.  A party may

respond to another party's objections within ten (10) days after receipt of a copy of any

objections or responses to the district judge at the time of filing.

15

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir.  1996).**

Signed at Lafayette, Louisiana, on February 27, 2008.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)